## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

| | |
|---|---|
| **ROBERTO HERNANDEZ**, an individual, | **CIVIL ACTION** |
| Plaintiff, | |
| v. | **Case No.  2:24-cv-252** |
| **THE CITY OF CAPE CORAL, FLORIDA**, | **Judge:** |
| Defendant. | **Mag. Judge:** |

## COMPLAINT AND DEMAND FOR JURY TRIAL

**NOW COMES** the Plaintiff, **ROBERTO HERNANDEZ** ("HERNANDEZ" or "Plaintiff"), by and through undersigned counsel, and states the following for his Complaint:

## CAUSES OF ACTION

1.      This is an action brought under Title VII of the Civil Rights Act of 1964 (Title VII), and the Florida Civil Right Act (FCRA) for (1) retaliation in violation of Title VII, and (2) retaliation in violation of the FCRA.

## PARTIES

2.      The Plaintiff, **ROBERTO HERNANDEZ** ("**HERNANDEZ**") is an individual and a resident of Florida who at all material times was employed by the Defendant in Lee County, Florida.

1

3.     Defendant, **THE CITY OF CAPE CORAL, FLORIDA** ("Defendant") is a Florida municipal corporation in Lee County, Florida and employed **HERNANDEZ**. The Defendant is an employer as intended by Title VII and the FCRA.

4.     At all material times, the Defendant employed greater than fifteen (15) employees.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction of this matter under 28 U.S.C. §1331.

6.     This Court has supplemental jurisdiction over **HERNANDEZ**'s state law claims pursuant to 28 U.S.C. §1367.

7.     Venue is proper in the United States District Court for the Middle District of Florida because the Plaintiff worked for the Defendant in Lee County, and the Defendant conducts business in, and some or all of the events giving rise to Plaintiff's claims occurred in Lee County, Florida, which is within the Middle District of Florida. Venue is proper in the Fort Myers Division since Lee County is within the Fort Myers Division.

8.     **HERNANDEZ** timely filed his Charge of Discrimination against the Defendant with the U.S. Equal Employment Opportunity Commission (EEOC), and this action is timely filed as he received his Notice of Right to Sue from the EEOC on December 20, 2023. (*See* Exhibit 1 – EEOC Notice of Right to Sue).

2

**GENERAL ALLEGATIONS**

9.     **HERNANDEZ** was employed by the Defendant as its City Manager and began his employment on August 12, 2020.

10.     **HERNANDEZ** always performed his assigned duties in a professional manner and was very well qualified for his position.

11.     On November 16, 2022, City Council met to discuss **HERNANDEZ**'s job performance. The scoring scale lists a 3-rating as being "average" and a 4-rating as being "above average." Each council member submitted a performance evaluation and the rating averaged to a score of 3.8 out of 5, just two tenths short of being "above average." In consideration of **HERNANDEZ**'s exemplary performance, City Council voted unanimously to provide him with a 6.25% raise, which included a discretionary 3.25% merit increase for his performance.

12.     On March 30, 2022, following a national search, **HERNANDEZ** extended an employment offer to Ms. T. Sharon Woodberry to fill a vacancy for the position of Business Development Officer, a highly visible position on the City Manager's Executive Leadership Team. position.

13.     **HERNANDEZ** concluded Ms. Woodberry was the most qualified applicant for the position. City Council members provided positive feedback on the selection of Ms. Woodberry, and Ms. Woodberry started employment on May 31, 2022.

14.     Shortly thereafter, once certain council members learned she was African-American, council members began questioning **HERNANDEZ** as to her selection and in doing so, implied racial stereotypes as to her appearance, demeanor and aptitude for the job.

15.     This questioning continued up to and including February 1, 2023, the date in which the City Council held a special meeting, without **HERNANDEZ** present, to discuss whether his employment contract with the City would be continued.

16.     Under the City Charter, the City Council has no role in hiring decisions for employees under the administrative supervision of the City Manager.

17.     Until Ms. Woodberry's appointment, City Council members had never inquired of, or questioned, any of **HERNANDEZ**'s hiring decisions. To the opposite, **HERNANDEZ**'s personnel decisions up to Ms. Woodberry's selection were widely applauded.

18.     On several occasions since Ms. Woodberry's arrival, Mayor John Gunter inquired into Ms. Woodberry's background and performance. He expressed to **HERNANDEZ** that Ms. Woodberry was not qualified for the job, despite serving in a similar capacity for 15 years for the City of Youngstown, Ohio. Ms. Woodberry had also served as that city's director of community planning and economic development. Mayor Gunter repeatedly stated that Ms. Woodberry "did

not have the right personality" for the job and often inquired about her probationary status. Mayor Gunter has never inquired about any other employee's probationary status or commented on their "personality."

19.     Additionally, **HERNANDEZ** was questioned by council members Hayden, Sheppard, Steinke of the decision to hire Ms. Woodberry. Once **HERNANDEZ** advised Councilmember Hayden of the hiring process and of Ms. Woodberry's background, he inquired no further. Councilmembers Steinke and Sheppard continued their questioning through February 1, 2023. **HERNANDEZ** was also asked to justify by councilmembers Steinke and Sheppard as to why the position was not offered to a lower-level white female employee, Ms. Nita Whaley, who scored significantly lower in the evaluation process and did not possess experience comparable to Ms. Woodberry.

20.     **HERNANDEZ** was told over and over by councilmembers how failing to appoint Ms. Whaley was a major blow to the City's economic development efforts and not appointing her would result in the City's efforts sliding backwards. Ms. Whaley played no role in developing economic or business development strategies, policies or procedures. As recent as February 1, 2023, councilmembers' Steinke, Sheppard and Cummings questioned either the process used in appointing Ms. Woodberry or why Ms. Whaley was not promoted into the position.

21.    **HERNANDEZ** *immediately* objected and communicated that there was no place for such racial stereotyping and that her selection was proper because she was clearly the best qualified applicant for the position. **HERNANDEZ** also advised councilmembers similar comments were made about Ms. Woodberry's predecessor, Mr. Ricardo Noguera, a Black Hispanic male. Specifically, comments were made that Mr. Noguera did not present the "right image" for the City of Cape Coral. **HERNANDEZ**'s decision to appoint an African American to the role drew the ire of councilmembers Cummings, Sheppard and Gunter, as well the attention of Councilmember Steinke.

22.    In addition to racial bias, the intolerance of certain councilmembers toward members of the LGBT community and employees was quite evident during **HERNANDEZ**'s tenure.

23.    In particular, Mayor Gunter objected to a lesbian employee's promotion to customer service representative. This employee's expressive lifestyle and appearance clearly bothered Mayor Gunter to the point of him telling me that the City should "not hire people like that for positions that come into contact with the public." He also expressed to **HERNANDEZ** how his interaction with this employee less than a month ago made him "uncomfortable." Mayor Gunter essentially demanded that **HERNANDEZ** remove her from having any contact with the public, which would have been a violation of the City Charter, Title VII and the FCRA. **HERNANDEZ** refused to do so.

24.     The pattern of stereotypical and discriminatory behavior of councilmembers Gunter and Sheppard toward an employee's sexual orientation was also evident during **HERNANDEZ**'s attempt to correct pay inequities surrounding members of the Executive Leadership Team. When **HERNANDEZ** expressed his desire to correct pay inequities for the position of Fire Chief and Utilities Director (both white males), all councilmembers agreed. When it came to Assistant City Manager Connie Barron, a white female lesbian, only councilmembers Gunter and Sheppard objected, stating they felt she was unqualified for the position and her performance did not warrant a pay adjustment despite the fact that several of her subordinates were paid a higher salary than she. Ms. Barron, who was appointed by **HERNANDEZ**'s predecessor, has served effectively as the Assistant City Manager for about five years and **HERNANDEZ** viewed her performance as more than satisfactory.

25.     Councilmember Sheppard also began criticizing **HERNANDEZ** for allowing an in-kind donation to the Cape Coral Gay Pride Parade in 2022. Both Gunter and Sheppard have continued questioning the City's participation in the parade by providing "in-kind" financial support.  The in-kind donation was merely providing security and traffic details through the City's police department – no cash funding was provided directly to the event organizer.

26.     Nevertheless, Councilmember Sheppard voiced repeatedly to **HERNANDEZ** that he felt the City should not be providing support to "those

7

people," and promoting their lifestyle, despite the fact the City provides the same in-kind donations for a vast array of non-LGBT events.

27.     Following the 2022 parade, Councilmember Sheppard provided **HERNANDEZ** with photographs that allegedly portrayed individuals engaging in sexual acts with a dog and what he considered obscene behavior. The allegations were investigated and proven false.

28.     Councilmember Sheppard also demanded that **HERNANDEZ** develop and enforce rules of decorum that would apply only during the Pride Parade. **HERNANDEZ** made clear that the City was not permitted to discriminate against the LGBT community as doing so would be a violation of their constitutional rights.

29.     This response was met with anger that continued through February 1, 2023 with Sheppard alleging **HERNANDEZ** lied about the City's participation. Mayor Gunter continued his persistent inquiry into City funding support for the Pride Parade.

30.     Finally, in a discussion with Councilmember Sheppard about the International City/County Management Association (ICMA), a world renown professional association of more than 12,000 professional city, town and county managers across the globe, Mr. Sheppard expressed to **HERNANDEZ** that he felt ICMA membership and credentialing was not important since this organization

was a "Woke" organization and allowed gay, lesbian and transgender individuals into its membership.

32. Ultimately, **HERNANDEZ**'s resistance to the discriminatory views of certain members of City Council contributed to the City Council's decision not to renew his contract.

32. On February 1, 2023, City Council voted not to renew **HERNANDEZ**'s contract despite a more than favorable performance evaluation less than 90 days earlier, and one of the chief reasons given were some "poor decisions and performance."

33. What was being referred to as "poor decisions and performance" was really **HERNANDEZ**'s continued refusal to engage in discrimination against African-Americans, LGBT employees and LGBT citizens of Cape Coral.

34. On February 14, 2023, **HERNANDEZ** sent a written objection to the Defendant in regard to the foregoing, and the Defendant then terminated **HERNANDEZ** on February 15, 2023.

35. In sum, because **HERNANDEZ** opposed and refused to participate in such illegal conduct, City Council retaliated by nonrenewing his contract.

## COUNT I – VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964- RETALIATION

36. Plaintiff incorporates by reference Paragraphs 1-35 of this Complaint as though fully set forth below.

37.     At all material times, **HERNANDEZ** was an employee and the Defendant was his employer covered by and within the meaning of Title VII.

38.     **HERNANDEZ** was qualified for the positions that he held with the Defendant.

39.     **HERNANDEZ** objected to racial and sexual orientation discrimination, and the Defendant clearly observed his growing discomfort concerning the same.

40.     **HERNANDEZ**'s acts constitute a protected activity because he objected to racial and sexual orientation discrimination.

41.     Said protected activity was the proximate cause of the Defendant's negative employment actions against **HERNANDEZ**.

42.     Instead of preventing said treatment, the Defendant retaliated against **HERNANDEZ**.

43.     The acts, failures to act, practices and policies of the Defendant set forth above constitute retaliation in violation of Title VII.

44.      As a direct and proximate result of the violations of Title VII, as referenced and cited herein, **HERNANDEZ** has lost all of the benefits and privileges of his employment and has been substantially and significantly injured in his career path.

45.     As a direct and proximate result of the violations of Title VII, and as a direct and proximate result of the prohibited acts perpetrated against him,

**HERNANDEZ** is entitled to all relief necessary to make him whole as provided for under Title VII.

46.    As a direct and proximate result of the Defendant's actions, **HERNANDEZ** has suffered damages, including but not limited to, a loss of employment opportunities, loss of past and future employment income and fringe benefits, humiliation, and non-economic damages for physical injuries, mental and emotional distress.

47.    **HERNANDEZ** has exhausted his administrative remedies and this count is timely brought.

**WHEREFORE**, Plaintiff requests trial by jury of all issues so triable as of right, and:

    i.    Back pay and all other benefits, perquisites and other compensation for employment which Plaintiff would have received had he maintained his position with the Defendant, plus interest, including but not limited to lost salary and bonuses;

    ii.    Front pay, including raises, benefits, insurance costs, benefits costs, and retirement benefits;

    iii.    Reimbursement of all expenses and financial losses Plaintiff has incurred as a result of Defendant's actions;

    iv.    Reasonable attorney's fees plus costs;

    v.    Compensatory damages, and;

vi.     Such other relief as this Court shall deem appropriate.

## COUNT II – VIOLATION OF TITLE VII OF THE FLORIDA CIVIL RIGHTS ACT - RETALIATION

48.     Plaintiff incorporates by reference Paragraphs 1-35 of this Complaint as though fully set forth below.

49.     At all material times, **HERNANDEZ** was an employee and the Defendant was his employer covered by and within the meaning of the FCRA.

50.     **HERNANDEZ** was qualified for the positions that he held with the Defendant.

51.     **HERNANDEZ** objected to racial and sexual orientation discrimination, and the Defendant clearly observed his growing discomfort concerning the same.

52.     **HERNANDEZ**'s acts constitute a protected activity because he objected to racial and sexual orientation discrimination.

53.     Said protected activity was the proximate cause of the Defendant's negative employment actions against **HERNANDEZ**.

54.     Instead of preventing said treatment, the Defendant retaliated against **HERNANDEZ**.

55.     The acts, failures to act, practices and policies of the Defendant set forth above constitute retaliation in violation of the FCRA.

56.     As a direct and proximate result of the violations of the FCRA, as referenced and cited herein, **HERNANDEZ** has lost all of the benefits and privileges of his employment and has been substantially and significantly injured in his career path.

57.     As a direct and proximate result of the violations of the FCRA, and as a direct and proximate result of the prohibited acts perpetrated against him, **HERNANDEZ** is entitled to all relief necessary to make him whole as provided for under the FCRA.

58.     As a direct and proximate result of the Defendant's actions, **HERNANDEZ** has suffered damages, including but not limited to, a loss of employment opportunities, loss of past and future employment income and fringe benefits, humiliation, and non-economic damages for physical injuries, mental and emotional distress.

59.     **HERNANDEZ** has exhausted his administrative remedies and this count is timely brought.

**WHEREFORE**, Plaintiff requests trial by jury of all issues so triable as of right, and:

    i.     Back pay and all other benefits, perquisites and other compensation for employment which Plaintiff would have received had he maintained his position with the Defendant, plus interest, including but not limited to lost salary and bonuses;

ii.    Front pay, including raises, benefits, insurance costs, benefits costs, and

retirement benefits;

iii.   Reimbursement of all expenses and financial losses Plaintiff has incurred

as a result of Defendant's actions;

iv.    Reasonable attorney's fees plus costs;

v.     Compensatory damages, and;

vi.    Such other relief as this Court shall deem appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b) and the Seventh Amendment to the United

States, the Plaintiff demands a trial by jury as to all issues triable as of right.

Respectfully submitted,

Dated: March 19, 2024          **/s/ Benjamin H. Yormak**
                               Benjamin H. Yormak
                               Florida Bar Number 71272
                               Lead Counsel for Plaintiff
                               YORMAK EMPLOYMENT & DISABILITY LAW
                               27200 Riverview Center Blvd., Suite 109
                               Bonita Springs, Florida 34134
                               Telephone: (239) 985-9691
                               Fax: (239) 288-2534
                               Email: byormak@yormaklaw.com