UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

| | |
|---|---|
| **ROBERTO HERNANDEZ**, an individual, | CIVIL ACTION |
| Plaintiff, | |
| v. | Case No. 2:24-cv-252-SPC-NPM |
| **THE CITY OF CAPE CORAL, FLORIDA**, | Judge: Sheri Polster Chappell |
| Defendant. | Mag. Judge: Nicholas P. Mizell |

## AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

**NOW COMES** the Plaintiff, **ROBERTO HERNANDEZ** ("HERNANDEZ" or "Plaintiff"), by and through undersigned counsel, pursuant to Fed. R. Civ. P. 15, and states the following for his Amended Complaint:

### CAUSES OF ACTION

1. This is an action brought under Title VII of the Civil Rights Act of 1964 (Title VII), and the Florida Civil Right Act (FCRA) for (1) retaliation in violation of Title VII, and (2) retaliation in violation of the FCRA.

### PARTIES

2. The Plaintiff, **ROBERTO HERNANDEZ** ("**HERNANDEZ**") is an individual and a resident of Florida who at all material times was employed by the Defendant in Lee County, Florida.

1

3. Defendant, **THE CITY OF CAPE CORAL, FLORIDA** ("Defendant") is a Florida municipal corporation in Lee County, Florida and employed **HERNANDEZ**. The Defendant is an employer as intended by Title VII and the FCRA.

4. At all material times, the Defendant employed greater than fifteen (15) employees.

## JURISDICTION AND VENUE

5. This Court has jurisdiction of this matter under 28 U.S.C. §1331.

6. This Court has supplemental jurisdiction over **HERNANDEZ**'s state law claims pursuant to 28 U.S.C. §1367.

7. Venue is proper in the United States District Court for the Middle District of Florida because the Plaintiff worked for the Defendant in Lee County, and the Defendant conducts business in, and some or all of the events giving rise to Plaintiff's claims occurred in Lee County, Florida, which is within the Middle District of Florida. Venue is proper in the Fort Myers Division since Lee County is within the Fort Myers Division.

8. **HERNANDEZ** timely filed his Charge of Discrimination against the Defendant with the U.S. Equal Employment Opportunity Commission (EEOC), and this action is timely filed as he received his Notice of Right to Sue from the EEOC on December 20, 2023. (*See* Doc. 1-1 – EEOC Notice of Right to Sue).

## GENERAL ALLEGATIONS

9. **HERNANDEZ** was employed by the Defendant as its City Manager and began his employment on August 12, 2020 following a national search conducted by an executive search firm.

10. Prior to that, **HERNANDEZ** served as Deputy City Manager of Fort Lauderdale, Florida, from April 2019 until being hired by Cape Coral City Council. He also served as city manager in Savannah, Georgia, from 2016-2019. In Savannah, he reported to a nine-member city council and led 2,513 employees. He is a 23-year veteran of the U.S. Army Reserve, retiring as senior instructor in civil-military operations.

11. **HERNANDEZ**'s extensive career in public service includes serving as deputy county administrator for Broward County, Florida, deputy county manager for Fulton County, Georgia, and assistant to the county administrator of Broward County. He holds a Master of Public Administration degree from Nova Southeastern University and a Bachelor of Public Administration degree from Florida International University. He is an International City Management Association (ICMA) credentialed manager and a Florida City/County Management Association member.

12. As the Defendant's City Manager, **HERNANDEZ** was responsible for maintaining the management functions of the city government and administering the day-to-day operations of most facets of city government. He worked closely

3

with the City Council to establish long-term strategic plans, as well as short-term targets. These plans and targets guide the operation of city government as it focuses on high-quality customer service and ongoing community growth and improvement.

13. **HERNANDEZ** always performed his assigned duties in a professional manner and was very well qualified for his position while working for the Defendant.

14. On November 16, 2022, City Council met to discuss **HERNANDEZ**'s job performance. The scoring scale lists a 3-rating as being "average" and a 4-rating as being "above average." Each council member submitted a performance evaluation and the rating averaged to a score of 3.8 out of 5, just two tenths short of being "above average." In consideration of **HERNANDEZ**'s exemplary performance, City Council voted unanimously to provide him with a 6.25% raise, which included a discretionary 3.25% merit increase for his performance.

15. Pursuant to the City Charter, **HERNANDEZ** was responsible for appointing the directors of 13 City agencies: Capital Improvement Projects, City Clerk, Development Services, Financial Services, Fire, Human Resources, Information Technology, Parks and Recreation, Police, Public Works, Utilities; and the offices of Communications and Business and Economic Development. However, one of those appointments has led to discriminatory employment practices, which **HERNANDEZ** objected to vociferously.

16. One of **HERNANDEZ**'s appointments was for the position of Economic and Business Development Officer, a highly visible position on the City Manager's Executive Leadership Team. The Economic and Business Development Officer leads the City's efforts to expand, diversify and improve the city's tax base and employment opportunities.

17. On March 30, 2022, following a national search, **HERNANDEZ** extended an employment offer to Ms. T. Sharon Woodberry to fill a vacancy for the position of Business Development Officer, a highly visible position on the City Manager's Executive Leadership Team position.

18. **HERNANDEZ** concluded Ms. Woodberry was the most qualified applicant for the position. City Council members provided positive feedback on the selection of Ms. Woodberry, and Ms. Woodberry started employment on May 31, 2022.

19. Shortly thereafter, once certain council members learned she was African American, council members began questioning **HERNANDEZ** as to her selection and in doing so, implied racial stereotypes as to her appearance, demeanor and aptitude for the job.

20. This questioning continued up to and including February 1, 2023, the date in which the City Council held a special meeting, without **HERNANDEZ** present, to discuss whether his employment contract with the City would be continued.

21. Under the City Charter, the City Council has no role in hiring decisions for employees under the administrative supervision of the City Manager.

22. Until Ms. Woodberry's appointment, City Council members had never inquired of, or questioned, any of **HERNANDEZ**'s hiring decisions. To the opposite, **HERNANDEZ**'s personnel decisions up to Ms. Woodberry's selection were widely applauded.

23. On several occasions since Ms. Woodberry's arrival, Mayor John Gunter inquired into Ms. Woodberry's background and performance. He expressed to **HERNANDEZ** that Ms. Woodberry was not qualified for the job, despite serving in a similar capacity for 15 years for the City of Youngstown, Ohio. Ms. Woodberry had also served as that city's director of community planning and economic development. Mayor Gunter repeatedly stated that Ms. Woodberry "did not have the right personality" for the job and often inquired about her probationary status. Mayor Gunter has never inquired about any other employee's probationary status or commented on their "personality."

24. Additionally, **HERNANDEZ** was questioned by council members Hayden, Sheppard, Steinke of the decision to hire Ms. Woodberry. Once **HERNANDEZ** advised Councilmember Hayden of the hiring process and of Ms. Woodberry's background, he inquired no further. Councilmembers Steinke and Sheppard continued their questioning through February 1, 2023. **HERNANDEZ**

was also asked by councilmembers Steinke and Sheppard to justify why the position was not offered to a lower-level white female employee, Ms. Nita Whaley, who scored significantly lower in the evaluation process and did not possess experience comparable to Ms. Woodberry.

25. **HERNANDEZ** was told over and over by councilmembers how failing to appoint Ms. Whaley was a major blow to the City's economic development efforts and not appointing her would result in the City's efforts sliding backwards. Ms. Whaley played no role in developing economic or business development strategies, policies or procedures. As recently as February 1, 2023, councilmembers' Steinke, Sheppard and Cummings questioned either the process used in appointing Ms. Woodberry or why Ms. Whaley was not promoted into the position. Furthermore, now-former Councilmember Cummings (who was removed from office following her criminal arrest[1]) incorrectly stated on February 1, 2023, that **HERNANDEZ** terminated Ms. Whaley's employment, which is false because Ms. Whaley resigned from her position.

26. The level of interference by Defendant's council members regarding Ms. Woodberry's appointment to a second-tier position was unprecedented and interfered with **HERNANDEZ**'s ability to professionally carry out his duties.

---

[1] Charges against Cummings include fraudulent application for a driver's license and two counts of false swearing in connection with or arising out of voting or elections.

27. **HERNANDEZ** *immediately* objected and communicated to those council members (who represented a majority) that there was no place for such racial stereotyping and that her selection was proper because she was clearly the best qualified applicant for the position. **HERNANDEZ** also advised those council members similar comments were made about Ms. Woodberry's predecessor, Mr. Ricardo Noguera, a Black Hispanic male. Specifically, comments were made that Mr. Noguera did not present the "right image" for the City of Cape Coral. **HERNANDEZ**'s decision to appoint an African American to the role drew the ire of councilmembers Cummings, Sheppard and Gunter, as well the attention of Councilmember Steinke.

28. In addition to racial bias, the intolerance of certain councilmembers toward members of the LGBT community and employees was quite evident during **HERNANDEZ**'s tenure.

29. In particular, Mayor Gunter objected to a lesbian employee's promotion to customer service representative. This employee's expressive lifestyle and appearance clearly bothered Mayor Gunter to the point of him telling me that the City should "not hire people like that for positions that come into contact with the public." He also expressed to **HERNANDEZ** how his interaction with this employee less than a month ago made him "uncomfortable." Mayor Gunter essentially demanded that **HERNANDEZ** remove her from having any contact

8

with the public, which would have been a violation of the City Charter, Title VII and the FCRA. **HERNANDEZ** refused to do so.

30. The pattern of stereotypical and discriminatory behavior of councilmembers Gunter and Sheppard toward an employee's sexual orientation was also evident during **HERNANDEZ**'s attempt to correct pay inequities surrounding members of the Executive Leadership Team. When **HERNANDEZ** expressed his desire to correct pay inequities for the position of Fire Chief and Utilities Director (both white males), all councilmembers agreed. When it came to Assistant City Manager Connie Barron, a white female lesbian, only councilmembers Gunter and Sheppard objected, stating they felt she was unqualified for the position and her performance did not warrant a pay adjustment even though several of her subordinates were paid a higher salary than she. Ms. Barron, who was appointed by **HERNANDEZ**'s predecessor, has served effectively as the Assistant City Manager for about five years and **HERNANDEZ** viewed her performance as more than satisfactory.

31. Councilmember Sheppard also began criticizing **HERNANDEZ** for allowing an in-kind donation to the Cape Coral Gay Pride Parade in 2022. Both Gunter and Sheppard have continued questioning the City's participation in the parade by providing "in-kind" financial support. The in-kind donation was merely providing security and traffic details through the City's police department – no cash funding was provided directly to the event organizer.

32. Nevertheless, Councilmember Sheppard voiced repeatedly to **HERNANDEZ** that he felt the City should not be providing support to "those people," and promoting their lifestyle, despite the fact the City provides the same in-kind donations for a vast array of non-LGBT events.

33. Following the 2022 parade, Councilmember Sheppard provided **HERNANDEZ** with photographs that allegedly portrayed individuals engaging in sexual acts with a dog and what he considered obscene behavior. The allegations were investigated and proven false.

34. Councilmember Sheppard also demanded that **HERNANDEZ** develop and enforce rules of decorum that would apply only during the Pride Parade. **HERNANDEZ** made clear that the City was not permitted to discriminate against the LGBT community as doing so would be a violation of their constitutional rights.

35. This response was met with anger that continued through February 1, 2023 with Sheppard alleging **HERNANDEZ** lied about the City's participation. Mayor Gunter continued his persistent inquiry into City funding support for the Pride Parade.

36. Finally, in a discussion with Councilmember Sheppard about the International City/County Management Association (ICMA), a world renown professional association of more than 12,000 professional city, town and county managers across the globe, Mr. Sheppard expressed to **HERNANDEZ** that he felt

ICMA membership and credentialing was not important since this organization was a "Woke" organization and allowed gay, lesbian and transgender individuals into its membership.

37. Ultimately, **HERNANDEZ**'s resistance to the discriminatory views of certain members of City Council contributed to the City Council's decision not to renew his contract.

38. On February 1, 2023, City Council voted not to renew **HERNANDEZ**'s contract despite a more than favorable performance evaluation less than 90-days earlier, and one of the chief reasons given were some "poor decisions and performance." The same council members that **HERNANDEZ** made objections to also voted not to renew his contract: Mayor Gunter and council members Dan Sheppard, Keith Long, Patty Cummings and Bill Steinke.

39. What they referred to as "poor decisions and performance" was really **HERNANDEZ**'s continued refusal to engage in discrimination against African Americans, LGBT employees and LGBT citizens of Cape Coral.

40. **HERNANDEZ**'s contract was not due to end until August 2023.

41. On February 14, 2023, **HERNANDEZ** sent a written objection to the Defendant in regard to the foregoing, and the Defendant then suddenly terminated **HERNANDEZ** "without cause" on February 15, 2023, which deprived **HERNANDEZ** of the full term and value of his contract that was not due to expire until August 2023.

42. Councilman Keith Long referenced the February 14th letter, stating during the meeting: "In light of the recent events, I believe it's in the best interest of this organization that I make a motion to elect our contractual option to terminate the employment of our City Manager Rob Hernandez without cause, effective immediately." The motion made by Long carried, as Mayor Gunter, Cummings, Sheppard and Steinke all voted to terminate **HERNANDEZ** immediately.

43. In sum, because **HERNANDEZ** opposed and refused to participate in such illegal conduct, City Council retaliated by nonrenewing his contract and immediately terminating his employment after he engaged in statutorily protected activity.

## **COUNT I – VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964- RETALIATION**

44. Plaintiff incorporates by reference Paragraphs 1-43 of this Complaint as though fully set forth below.

45. At all material times, **HERNANDEZ** was an employee and the Defendant was his employer covered by and within the meaning of Title VII.

46. **HERNANDEZ** was qualified for the positions that he held with the Defendant.

47. **HERNANDEZ** objected to racial and sexual orientation discrimination, and the Defendant clearly observed his growing discomfort concerning the same.

48. **HERNANDEZ**'s acts constitute a protected activity because he objected to racial and sexual orientation discrimination.

49. Said protected activity was the proximate cause of the Defendant's negative employment actions against **HERNANDEZ**.

50. Instead of preventing said treatment, the Defendant retaliated against **HERNANDEZ**.

51. The acts, failures to act, practices and policies of the Defendant set forth above constitute retaliation in violation of Title VII.

52. As a direct and proximate result of the violations of Title VII, as referenced and cited herein, **HERNANDEZ** has lost all of the benefits and privileges of his employment and has been substantially and significantly injured in his career path.

53. As a direct and proximate result of the violations of Title VII, and as a direct and proximate result of the prohibited acts perpetrated against him, **HERNANDEZ** is entitled to all relief necessary to make him whole as provided for under Title VII.

54. As a direct and proximate result of the Defendant's actions, **HERNANDEZ** has suffered damages, including but not limited to, a loss of

employment opportunities, loss of past and future employment income and fringe benefits, humiliation, and non-economic damages for physical injuries, mental and emotional distress.

55. **HERNANDEZ** has exhausted his administrative remedies and this count is timely brought.

**WHEREFORE**, Plaintiff requests trial by jury of all issues so triable as of right, and:

i. Back pay and all other benefits, perquisites and other compensation for employment which Plaintiff would have received had he maintained his position with the Defendant, plus interest, including but not limited to lost salary and bonuses;

ii. Front pay, including raises, benefits, insurance costs, benefits costs, and retirement benefits;

iii. Reimbursement of all expenses and financial losses Plaintiff has incurred as a result of Defendant's actions;

iv. Reasonable attorney's fees plus costs;

v. Compensatory damages, and;

vi. Such other relief as this Court shall deem appropriate.

**COUNT II – VIOLATION OF TITLE VII OF THE FLORIDA CIVIL RIGHTS ACT - RETALIATION**

14

56. Plaintiff incorporates by reference Paragraphs 1-43 of this Complaint as though fully set forth below.

57. At all material times, **HERNANDEZ** was an employee and the Defendant was his employer covered by and within the meaning of the FCRA.

58. **HERNANDEZ** was qualified for the positions that he held with the Defendant.

59. **HERNANDEZ** objected to racial and sexual orientation discrimination, and the Defendant clearly observed his growing discomfort concerning the same.

60. **HERNANDEZ**'s acts constitute a protected activity because he objected to racial and sexual orientation discrimination.

61. Said protected activity was the proximate cause of the Defendant's negative employment actions against **HERNANDEZ**.

62. Instead of preventing said treatment, the Defendant retaliated against **HERNANDEZ**.

63. The acts, failures to act, practices and policies of the Defendant set forth above constitute retaliation in violation of the FCRA.

64. As a direct and proximate result of the violations of the FCRA, as referenced and cited herein, **HERNANDEZ** has lost all of the benefits and privileges of his employment and has been substantially and significantly injured in his career path.

65. As a direct and proximate result of the violations of the FCRA, and as a direct and proximate result of the prohibited acts perpetrated against him, **HERNANDEZ** is entitled to all relief necessary to make him whole as provided for under the FCRA.

66. As a direct and proximate result of the Defendant's actions, **HERNANDEZ** has suffered damages, including but not limited to, a loss of employment opportunities, loss of past and future employment income and fringe benefits, humiliation, and non-economic damages for physical injuries, mental and emotional distress.

67. **HERNANDEZ** has exhausted his administrative remedies and this count is timely brought.

**WHEREFORE**, Plaintiff requests trial by jury of all issues so triable as of right, and:

i. Back pay and all other benefits, perquisites and other compensation for employment which Plaintiff would have received had he maintained his position with the Defendant, plus interest, including but not limited to lost salary and bonuses;

ii. Front pay, including raises, benefits, insurance costs, benefits costs, and retirement benefits;

iii. Reimbursement of all expenses and financial losses Plaintiff has incurred as a result of Defendant's actions;

   iv.     Reasonable attorney's fees plus costs;

   v.     Compensatory damages, and;

   vi.     Such other relief as this Court shall deem appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b) and the Seventh Amendment to the United States, the Plaintiff demands a trial by jury as to all issues triable as of right.

Respectfully submitted,

Dated: May 27, 2024

**/s/ Benjamin H. Yormak**
Benjamin H. Yormak
Florida Bar Number 71272
Lead Counsel for Plaintiff
YORMAK EMPLOYMENT & DISABILITY LAW
27200 Riverview Center Blvd., Suite 109
Bonita Springs, Florida 34134
Telephone: (239) 985-9691
Fax: (239) 288-2534
Email: byormak@yormaklaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on May 27, 2024, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants: None.

**s/ Benjamin H. Yormak**
Benjamin H. Yormak